UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00475-TBR

STEPHON D. HARBIN,                                                                                      Plaintiff

v.

JABIL GLOBAL SERVICES LLC,                                                                   Defendants

## MEMORANDUM OPINION

This matter is before the Court upon Defendant's motion for summary judgment. (DN 23). Plaintiff has responded. (DN 25). Defendant has replied. (DN 26). For the following reasons, Defendant's motion for summary judgment is GRANTED.

## BACKGROUND

This matter arises out of the employment of Plaintiff Stephon D. Harbin with Defendant Jabil Global Services LLC ("Jabil"). Harbin, proceeding *pro se*, claims that Jabil enacted "job policies that disproportionately exclude African-Americans from leadership positions," gave "preferential treatment toward White employees," and failed to promote and ultimately terminated him because of race. (DN 1-1).

Jabil [1] provides supply chain management, manufacturing services, and aftermarket product support to technology companies. In November, 2003, Harbin was hired in a temporary capacity as a quality technician at Jabil's facility located in Louisville, Kentucky. Harbin was made a full-time employee in May, 2004 and rose steadily through the company. From August 2004 to April, 2006, Harbin served as team

---

[1] Jabil changed its name to iQor Global Services, LLC in June, 2014. Since the parties refer to this entity as "Jabil," the Court will do so also.

lead in various departments. After April, 2006, Harbin was promoted to a series of supervisory and managerial roles over several large accounts. In 2006, Harbin served as production supervisor over the Dell account. Also in 2006, Harbin served as the second shift repair manager for the HP account. In 2007, Harbin was promoted to the repair manager for all shifts of the HP account. In 2008, Harbin was promoted to program manager for the Nokia account, later moving to quality engineer in that department.

Although Harbin's employment history shows a string of promotions, it is also filled with incidents in which Harbin was disciplined for his behavior. In September, 2005, Harbin received a glowing Leadership Performance Review, being praised for his leadership and efficient performance. (DN 23-2). However, Harbin was also informed that he was "too abrasive" and needed to "always maintain a level head and think things through." (DN 23-3). In November, 2005, Harbin was cited for "using inappropriate language when talking to another employee." (DN 23-10, p. 1). Harbin did not dispute this claim.

In March, 2007, Jabil received several complaints that "Harbin's style of management is creating a hostile work environment" and there were "frequent displays of management by intimidation and the use of inappropriate language." (DN 23-10, p. 3). Jabil expressed concern that it may lose employees and transferred Harbin to a different shift. Harbin disputed these claims and stated he did not use intimidating language but instead "motivate[d] and encourage[d] my team." (DN 23-10, p. 3). Jabil subsequently determined these complaints were "unfounded" and returned Harbin to the second shift. (DN 23-10, p. 5).

In April, 2009, Harbin was cited because he allegedly (1) "openly brags about his [paid leave] balance," (2) "made comments as to his level of superiority and how he can tell anyone in any area what to do at any time and they had better do it;" (3) expressed frustration with his work and claimed to be using his office to do schoolwork; and (4) had personal arguments with his girlfriend, also an employee, on the production floor. (DN 23-10, p. 8-9).

In November 5, 2011, Harbin received training on appropriate workplace conduct. (DN 23-10). Shortly thereafter, Jabil received several complaints that Harbin was "treating others with lack of respect, threatening co-workers jobs, [and making] general threats of physical harm and using inappropriate language." (DN 23-10, p. 10). This incident seemed to be precipitated by Harbin's frustration with Sean Pendergrast, a repair technician. Several employees gave statements regarding this incident. Justin Greenwell, a repair team leader, claimed Harbin stated loudly that "if people kept fucking up he would fire them and fight them" in reference to Pendergrast. (DN 23-10, p. 12). Pendergrast claimed that when he first met Harbin, Harbin told him: "I don't give a shit about any of your family, I'll fire your ass." (DN 23-10, p. 14). He also claimed that Harbin said things like "I'd beat any mother fucker's ass in here" and "Who ever took my rack I'm going to kill y'all." (DN 23-10, p.14). Another employee, Michael Cole, also claimed that "Harbin is always threatening jobs but that [Cole] thinks he is joking." (DN 23-10, p. 15). Several other employees expressed the same sentiment of being unsure about whether Harbin was serious about firing employees. (DN 23-10, p. 13-14). On several occasions Harbin, while standing near an employee, openly commented to others about how that employee needed to be fired. (DN 23-10, p. 13-14).

3

In January, 2012, Harbin applied for the position of Operations Manager. Jabil awarded the position to Jesselynn Mineo. In April, 2012, Jabil offered Harbin a promotion to serve as the repair supervisor on the Lenovo account. (DN 23-8, p. 1). Jabil was still negotiating with Lenovo at the time Harbin was promoted. Those negotiations fell through in late 2012, resulting in a reduction of force. Harbin took over the position of repair supervisor over the Covidien account, receiving a small pay raise. (DN 23-8, p. 2).

In July, 2013, Mineo transferred to another location and the Operations Manager position came open again. (DN 23-4). Harbin applied. Jabil awarded the position to Bill O'Connor. (DN 23-7, p. 64). In the e-mail announcing the decision, Site Director Mitch Lewis made a point to mention that Harbin's "leadership of the Covidien production line has been an asset and made this a very tough decision." (DN 23-5). "As part of Jabil's efforts to prepare Mr. Harbin to be able to attain that position in the future," the Human Resources Manager and outgoing Operations Manager prepared a "Heat Map Personal Development Plan" for Harbin. (DN 23-2). The "heat map" listed all of the "competencies" required by the position of Operations Manager, explained where Harbin was deficient, and suggested courses Harbin could complete to improve in these areas. (DN 23-13). Jabil also sent Harbin to a seminar entitled "How to Communicate with Tact and Professionalism." (DN 23-21, 23-23).

Harbin was terminated in February, 2014. Two incidents preceded his termination. First, Lewis arranged for Harbin to meet with Jabil's Vice President Scott Greer during a site visit and later attend a basketball game together. Lewis felt that Harbin, instead of taking the opportunity to impress Greer, acted in a "detached manner"

4

and "vaguely voiced his unhappiness." (DN 23-4). Lewis met with Harbin and "explained that he wasted an opportunity to aid his career development." (DN 23-4). During that meeting, Lewis and Harbin also discussed plans to transfer Ricky Cole from Harbin's team to another team; plans which were supposed to remain confidential. (DN 23-4). Jabil subsequently received a complaint from Cole that he feared for his job and feared retaliation by Harbin if Harbin learned of the complaint. (DN 23-2). Cole said that Harbin informed him of his impending transfer, including allegedly misinforming Cole about certain aspects of the transfer. (DN 23-2). On February 28, 2014, Jabil terminated Harbin. (DN 23-2).

STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present evidence on which the trier of fact could reasonably find for her. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to

render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

## DISCUSSION

Harbin, proceeding *pro se*, does not title his claims in his complaint. However, "[p]ro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings." *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). The Court construes Harbin's complaint as alleging the following claims: (I) retaliation; (II) disparate treatment; and (III) disparate impact.

**I.     Retaliation.**

"To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) that he suffered adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action." *Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997). "The statute makes it unlawful for an employer to discriminate against an employee because the employee opposed an unlawful employment practice, or made a charge, or participated in an investigation, proceeding, or hearing related to Title VII." *E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541, 543 (6th Cir. 1993). "[A]n adverse employment action is defined as a 'materially adverse change in the terms or conditions' of employment." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (*quoting Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)).

If the plaintiff establishes a *prima facie* case, the employer must then offer a legitimate, nondiscriminatory reason for its action. *See Monette v. Electronic Data*

*Systems Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). If the employer satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. *Penny*, 128 F.3d at 417. "The plaintiff, of course, bears the ultimate burden of proving that the proffered reason for the action was merely a pretext for discrimination." *Id*.

Harbin claims that he "was terminated because he voiced his discontent with the manner in which discipline, hiring, promoting and termination of African-American employees were handled." (DN 25). The opposition of improper employment practices is a protected activity. *Ohio Edison Co.*, 7 F.3d at 543. Furthermore, an employee who has been terminated has, of course, suffered an adverse employment action. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Finally, "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Accordingly, the Court finds that Harbin has established a *prima facie* case of retaliation. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met").

The burden therefore shifts to Jabil to state a legitimate, non-discriminatory reason for Harbin's termination. "This is merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). Moreover, an employer is not required to "*prove absence of discriminatory motive*," but instead need only "articulate some legitimate,

7

nondiscriminatory reason for the employee's rejection." (emphasis in original) *Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 (1978) (citation omitted).

Jabil claims that it terminated Harbin because he "divulged his past confidential communications" with to an employee and "communicated with Cole in a manner that made Cole fear for his job and for retaliation by Harbin if he learned that Cole complained to Human Resources." (DN 23-1). Jabil claims that management lost faith in Harbin after yet another incident in which Harbin demonstrated unprofessional communication with an employee, despite Jabil's efforts to train Harbin in this area. The Court finds these facts are sufficient to present a legitimate, non-discriminatory reason for terminating Harbin.

Once a defendant has presented a legitimate, non-discriminatory reason, "the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "A plaintiff may demonstrate that an employer's proffered legitimate reason for an adverse employment action is pretextual on any of three grounds: 1) by showing that the reason has no basis in fact; 2) by showing that the reason did not actually motivate the employer's action; or 3) by showing that the reason was insufficient to motivate the action." *Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 366 (6th Cir. 2007) *abrogated by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors" including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a

8

motion for judgment as a matter of law." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-49 (2000).

Harbin argues Jabil's stated reason for terminating him has no basis in fact. This "type of showing is easily recognizable and consists of evidence that the proffered bases" are "factually false." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Harbin claims "[a]ll of the annual reviews demonstrate the Plaintiff had excellent communication skills and there were no issues with Plaintiff's communication or behavior." (DN 25). Harbin also claims "[t]here is no documented evidence of suggested seminars or courses for the Plaintiff to attend." (DN 25). Harbin does not cite to the record in support of this assertion and Harbin has not attached any exhibits to his response. On the contrary, the record shows that in 2005, 2007, 2009, and 2011, Harbin was informed that he had an "abrasive" manner (DN 23-3), used "inappropriate or abusive" language (DN 23-10), and made "unprofessional and threatening statements." (DN 23-2). Harbin underwent training "regarding appropriate conduct and communication on 11/05/11 and 08/19/13." (DN 23-15). In July, 2013, Jabil constructed a "heat map" of areas in which Harbin was competent and areas which needed improvement. Areas of concern included "Conflict Management," "Inter-personal Savvy," "Communication," and "Effectively Influence/Motivate Others." (DN 23-13). Each came with multiple recommendations of online courses which Harbin could complete to improve in these areas. Site Director Mitch Lewis and Human Resources Manager Olivia Rainwater each provided affidavits explaining Jabil's decision to terminate Harbin after his incident with Cole. (DN 23-2, 23-4). In light of this evidence, the Court finds that Harbin's claim that Jabil's stated reason for terminating him had no

9

basis in fact is not a plausible. Accordingly, Harbin has not demonstrated that Jabil's proffered reason is pretextual and therefore summary judgment on this claim is appropriate in Jabil's favor.

## II.     Disparate Treatment.

In the absence of direct evidence of discrimination, a claim of disparate treatment is subject to the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As above, the burden is on the plaintiff to establish a *prima facie* case of disparate treatment. Defendant must then present a legitimate, non-discriminatory reason for their action. Plaintiff must then demonstrate pretext. *Penny*, 128 F.3d at 417; *Hollins v. Atl. Co.*, 188 F.3d 652, 658 (6th Cir. 1999).

"In order to satisfy the requirements of the *prima facie* case of disparate treatment the plaintiff must produce evidence that: (1) she is a member of a protected class, and (2) for the same or similar conduct she was treated differently from similarly situated non-minority employees." *Hollins*, 188 F.3d at 658. "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated in all respects." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Harbin alleges that he "witnesses and experienced preferential treatment toward White employees and disparate treatment of African-American employees." (DN 1-1). Harbin also alleges that he "and other African-American employees were passed over for promotions and/or not considered at all while less qualified White employees received promotions and/or positions." (DN 1-1). Harbin twice applied for and did not receive a promotion to the position of Operations Manager. In 2012, the position went to Jesselynn

10

Mineo. (DN 23-7, p. 13). In 2013, the position went to Bill O'Connor. (DN 23-7, p. 64). The Court finds Harbin's allegations sufficient to state a *prima facie* claim of disparate treatment.

The burden therefore shifts to Jabil to elucidate a legitimate, non-discriminatory reason for not promoting Harbin. While it appears that Jabil viewed Harbin as qualified for the position, (DN 23-5), it also viewed Mineo and O'Connor as qualified. Jabil cites the lack of disciplinary issues with Mineo and O'Connor and their leadership abilities as significant reasons why Jabil chose those candidates over Harbin. Conversely, Harbin acknowledged that that he was not "even keeled" like O'Connor:

> Q. Because you're passionate?
>
> A. Yes. Yes. Yes.
>
> Q. And you get worked up?
>
> A. Yes, I do.

(DN 23-6, p. 43). As a general rule, "an employer is free to choose among qualified candidates." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). "An employer has even greater flexibility in choosing a management-level employee, as is the case here, because of the nature of such a position." *Id*. The Court finds that Jabil's preference for the calmer managerial style of Mineo and O'Connor is a legitimate, non-discriminatory reason for not promoting Harbin.

The burden therefore shifts to Harbin to demonstrate that Jabil's stated reason is pretextual. Harbin claims that he was the most qualified candidate for the Operations Manager position. "Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of

11

discrimination." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626 (6th Cir. 2006). "In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment." *Id.* at 627. However, in this case, Harbin relies on his own assertions that Jabil acted in a discriminatory fashion and has produced no evidence to support these assertions. *See e.g. Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 392 (6th Cir. 2009) (The record also contains other evidence probative of pretext . . . [such as] male officers frequently made degrading comments regarding the capabilities of female officers, expressed the view that female officers would never be promoted to command positions, and made generally degrading remarks about women); *see generally Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 399 (6th Cir. 2008).

"[I]n the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006) ("evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient"). Here again, Harbin's claim suffers from a lack of any evidence outside his own assertions. In his response, Harbin does not address Mineo's qualifications, and it appears Harbin is not pursuing his claim based on her promotion over him.[2] With respect

---

[2] In his deposition, Harbin was asked: "you've already said you didn't connect the Jesselynn one with race; right?" Harbin replied: "Not initially, no. I still don't feel like it was race related." (DN 23-6, p. 37).

to O'Connor, Harbin claims: "William O'Connor was not at the time a qualified candidate for the position. He was not a Six Sigma Black Belt. He did not have the experience. He did not have the tenure. His only qualification is that he was White." (DN 25). Other than Harbin's own assertions, he has provided no support for his position. Furthermore, Harbin admits that O'Connor was qualified for the position, had an "even keeled" demeanor, and that he was unaware of any complaints against O'Connor. (DN 23-6, p. 41-43). Given the lack of evidence to the contrary, the Court finds that Harbin has not shown that Jabil's stated reason for not promoting him was pretextual. Accordingly, summary judgment in favor of Jabil is appropriate for this claim.

### III. Disparate Impact.

Harbin alleges that Jabil enacted "job policies that disproportionately exclude African-Americans from leadership positions." (DN 1-1). The Court interprets this as alleging a claim of disparate impact.

"Disparate impact analysis is used when an employer's facially neutral policy adversely affects a protected class." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004). "To establish a *prima facie* disparate-impact case, a plaintiff must: (1) identify a specific employment practice; and (2) present data indicating that the specific practice had an adverse impact on a protected group." *Davis v. Cintas Corp.*, 717 F.3d 476, 494 (6th Cir. 2013). "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy." *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005). The "employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical

13

disparities." (emphasis in original). *Id*; *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 403 (6th Cir. 2008) ("This specific-practice requirement is important because isolating and identifying such practices 'is not a trivial burden,' and involves more than simply 'point [ing] to a generalized policy that leads to such an impact'") (citation omitted).

Harbin has failed to identify a specific employment practice which is allegedly discriminatory. In his complaint, Harbin alleges that he "experienced job policies that disproportionately exclude African-Americans from leadership positions." (DN 1-1). In his response, Harbin explains that "[t]here are currently **NO** African-Americans in any operational leadership positions within the current operations." (emphasis in original) (DN 25). Harbin also claims that he "can show in a trial that the Defendant's policies and procedures had a disparate impact on him and other African-Americans since Plaintiff was the only one in a supervisor position and there are currently none in any of the operations positions." (DN 25).

The Sixth Circuit has explained that a plaintiff challenging promotion practices must "identify and isolate specific employment practices" which cause a disparate impact. *Grant v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 446 F. App'x 737, 741 (6th Cir. 2011) (unpublished). Plaintiff's failure to do so may be "forgiven if they had 'demonstrate[d] to the court that the elements of [Defendant's] decisionmaking process are not capable of separation for analysis.'" *Id*. (quoting 42 U.S.C. § 2000e–2(k)(1)(B)(i)). However, a "plaintiff may challenge the process as a whole only if he *first* demonstrates that its elements are incapable of separation." (emphasis in original). *Grant v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 446 F. App'x 737, 741 (6th Cir. 2011). In this case, Harbin has made broad allegations that Jabil enacted discriminatory

14

policies.  Harbin has not identified a specific policy which has had an adverse impact on African-Americans.  Nor has Harbin demonstrated how elements of Jabil's decisionmaking are so intertwined as to frustrate a separate analysis.  Accordingly, the Court finds that Harbin has failed to establish the first element of a *prima facie* disparate impact claim.

The Court also finds that Harbin has failed to present any data indicating an employment practice had an adverse impact on African-Americans.  "[T]he plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988).  "Small or incomplete data sets and inadequate statistical techniques are insufficient to establish a plaintiffs prima facie case." *Austin v. Memphis Light, Gas & Water Div.*, 129 F.3d 1263 (6th Cir. 1997).  "Plaintiffs who present a statistical analysis of some challenged practice need not rule out all other variables to prevail." *United States v. City of Warren, Mich.*, 138 F.3d 1083, 1094 (6th Cir. 1998) ("the City of Warren employed not a single black person out of a workforce of 1500 certainly demonstrates a grossly discriminatory impact").  However, a "complete failure to make any such statistical showing is fatal to [plaintiff's] claim." *Butts v. McCullough*, 237 F. App'x 1, 9 (6th Cir. 2007) (unpublished).  In this case, Harbin provides no statistical analysis but instead relies on his own assertion that Jabil does not employ any African-Americans in a managerial capacity.  The Court finds this insufficient to establish the second element of a *prima facie* claim for disparate impact.  As Harbin has failed to establish either element

15

of a disparate impact claim, the Court holds that summary judgment is appropriate in favor of Jabil.

## CONCLUSION

IT IS HEREBY ORDERED Defendants' motion for summary judgment (DN 23) is GRANTED.

A separate judgment and order will issue.

cc: counsel of record

Stephon D. Harbin
2332 W. Burnett Ave
Louisville, KY 40210